1
2
3
4
5
6
7
8        UNITED STATES DISTRICT COURT
9        CENTRAL DISTRICT OF CALIFORNIA
10

JAMES R. JEROME,                    )  Case No. ED CV 07-00894-OP
                                    )
              Plaintiff,            )
                                    )
        v.                          )  MEMORANDUM OPINION; ORDER
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
              Defendant.            )
                                    )

        The Court[1] now rules as follows with respect to the disputed issues listed in
the Joint Stipulation ("JS").[2]

/ / /

/ / /

/ / /

_____

        [1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before
the United States Magistrate Judge in the current action.  (See Dkt. Nos. 6, 8.)

        [2] As the Court advised the parties in its Case Management Order, the
decision in this case is being made on the basis of the pleadings, the
Administrative Record, and the Joint Stipulation filed by the parties.  In
accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has
determined which party is entitled to judgment under the standards set forth in 42
U.S.C. § 405(g).

# I.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff is raising as the grounds for reversal and/or remand are as follows:

1.     Whether the ALJ properly assessed the credibility of Plaintiff's wife;

2.     Whether the ALJ properly considered the type, dosages and side-effects of Plaintiff's medications;

3.     Whether the ALJ properly assessed Plaintiff's credibility; and

4.     Whether the ALJ failed to develop the record.

(JS at 2.)

# II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

1

# III.

2

# DISCUSSION

3

## A.    The ALJ Properly Assessed the Credibility of Plaintiff's Wife.

4      Plaintiff contends the ALJ improperly assessed the credibility of Plaintiff's

5  wife. (JS at 3-6.)  Plaintiff argues that the ALJ's reasons for rejecting the

6  credibility of Plaintiff's wife were "incredulous" and "patently bogus."  (Id. at 3-

7  4.)

8      Title 20 C.F.R. §§ 404.1513(d) and 416.913(d) provide that, in addition to

9  medical evidence, the Commissioner "may also use evidence from other sources

10  to show the severity of  [an individual's] impairment(s) and how it affects [her]

11  ability to work," and the Ninth Circuit has repeatedly held that "[d]escriptions by

12  friends and family members in a position to observe a claimant's symptoms and

13  daily activities have routinely been treated as competent evidence." Sprague v.

14  Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).  This applies equally to the sworn

15  hearing testimony of witnesses (see Nguyen v. Chater, 100 F.3d 1462, 1467 (9th

16  Cir. 1996)), as well as to unsworn statements and letters of friends and relatives.

17  See Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 975 (9th Cir. 2000).

18  If the ALJ chooses to reject such evidence from "other sources," he may not do so

19  without comment.  Nguyen, 100 F.3d at 1467.  The ALJ must provide "reasons

20  that are germane to each witness."  Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir.

21  1993).

22      The ALJ is not relieved of his obligation to comment upon lay witness

23  testimony simply because he has properly discredited the Plaintiff's testimony.

24  To find otherwise would be based upon "the mistaken impression that lay

25  witnesses can never make independent observations of the claimant's pain and

26  other symptoms."  Id.  Similarly, the mere fact that the lay witness is a relative

27  may not be a valid reason alone for rejecting lay witness testimony.  Regennitter

28

1  v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); but see

2  Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (the ALJ's consideration of

3  the claimant's prior girlfriend's close relationship with the plaintiff and desire to

4  help him as a possible reason for bias was a reason germane to that witness).

5      The ALJ's failure to address the witness' testimony generally is not

6  harmless.[3]  In failing to address a lay witness' statement, the error is harmless

7  only if "a reviewing court . . . can confidently conclude that no reasonable ALJ,

8  when fully crediting the testimony, could have reached a different disability

9  determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th

10  Cir. 2006); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

11  2006).

12      Plaintiff's wife, Tammy Sue Jerome, provided testimony at the hearing

13  before the ALJ.  (AR at 210, 219-23.)  Ms. Jerome testified that she separated

14  from Plaintiff approximately a month prior to the hearing date.  (Id. at 220, 222.)

15  During their separation, she lived forty minutes away and saw him once or twice

16  a week for a couple of hours each time.  (Id. at 220-21.)  Prior to October 2006,

17  she lived with Plaintiff and saw him "all the time."  (Id. at 221-22.)  Ms. Jerome

18  testified that because Plaintiff was constantly complaining of pain, she bore the

19  burden of completing the household tasks.  (Id. at 222.)  She further testified that

20  Plaintiff has difficulty concentrating on and completing tasks due to his pain.  (Id.

21  at 222-23.)  Finally, she indicated that Plaintiff was also moody, depressed, and

22  restless.  (Id. at 223.)

23      In finding that Ms. Jerome's testimony was entitled to little probative

24  value, the ALJ provided:

25          I find her testimony to lack credibility, however, as her assertions

26  _____

27      [3]  The harmless error rule is applicable in Social Security cases.  See Booz

28  v. Sec'y of Health & Human Servs., 734 F.2d 1378, 1380 (9th Cir. 1984).

1
2
3
4

> are not consistent with the medical evidence of record and because she
> acknowledged she is and has been receiving Social Security disability
> benefits due to a severe eye problem, yet did not wear glasses during
> the hearing or appear to have any difficult seeing.

5
6

(Id.)  Thus, the ALJ rejected Ms. Jerome's testimony because it was inconsistent
with the medical evidence and because he found her to be a non-credible witness.

7
8
9
10
11
12
13
14
15
16
17
18
19

Here, the ALJ properly relied on the medical evidence which contradicted
Ms. Jerome's testimony.  (Id.); see also Bayliss v. Barnhart, 427 F. 3d 1211, 1218
(9th Cir. 2005) (ALJ may discount lay testimony which conflicts with the medical
evidence).  Specifically, Dr. F. Kalmar conducted a residual functional capacity
assessment and concluded that Plaintiff was able to perform sedentary work.  (AR
at 169-77.); see also 20 C.F.R. §§ 404.156(a), 416.967(a).  Also, Dr.  Joseph
Hartman reviewed the medical record and opined that Plaintiff's statements
"regarding his inability to perform work are not fully supported by the medical
evidence in the file."  (AR at 193-94.)  Both Drs. Kalmar and Hartman
specifically concluded that Plaintiff could perform sedentary work, which is
inconsistent with Ms. Jerome's testimony that Plaintiff is unable to do anything.
(Id. at 169-77, 193-94.)  Thus, the ALJ properly concluded that the medical
evidence was inconsistent with the testimony of Ms. Jerome.

20
21
22
23
24
25
26
27

Next, the ALJ found that Ms. Jerome was an unreliable witness.  (Id. at 15.)
Ms. Jerome testified that she receiving Social Security benefits due to partial
blindness in her left eye.  (Id. at 221.)  At the hearing, the ALJ observed no
indication that Ms. Jerome suffered from a severe eye problem, such as wearing
glasses or straining to see.  (Id. at 15.)  To determine whether a claimant's or a
witness' testimony regarding the severity of his symptoms is credible, the ALJ
may consider, inter alia, ordinary techniques of credibility evaluation, such as the
claimant's reputation for lying, prior inconsistent statements concerning the

28

5

1  symptoms, and other testimony by the claimant that appears less than candid.

2  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Smolen v.

3  Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  Thus, the ALJ utilized ordinary

4  techniques of credibility evaluation to reject Ms. Jerome's testimony.

5       Plaintiff argues that the ALJ improperly rejected Ms. Jerome's credibility

6  on the basis that he could not observe any indication of any severe eye problem.

7  (JS at 3.)  However, regardless of whether the ALJ properly assessed the

8  credibility of Ms. Jerome based upon this observation, the ALJ still rejected Ms.

9  Jerome's testimony because it was inconsistent with the evidence in the medical

10  record.[4]  Plaintiff also alleges that the ALJ relied upon Ms. Jerome's lack of

11  current proximity to Plaintiff as a reason for rejecting her testimony.  (Id. at 3.)

12  Plaintiff's allegation is without merit.  The ALJ only noted Ms. Jerome's current

13  living situation.  He did not rely upon it to reject Ms. Jerome's testimony.  (AR at

14  15.)

15       Based on the foregoing, the Court finds that the ALJ properly rejected Ms.

16  Jerome's testimony and provided germane reasons for discrediting her testimony.

17  Thus, there was no error.

18  **B.    The ALJ Did Not Err in Failing to Consider Plaintiff's Medications**

19  **and Their Side Effects.**

20       Plaintiff contends that, in violation of Social Security Ruling 96-7p, the

21  ALJ failed to consider the "type, dosage, effectiveness, and side effects of any

22  medication the individual takes or has taken to alleviate pain or other symptoms."

23  (JS at 7-8.)  Specifically, Plaintiff claims that if the ALJ chose to disregard

24  Plaintiff's testimony as to the side effects, he must support that decision with

25  specific findings similar to those required for excess pain testimony, as long as

───────────────────

27       [4]  As a result, any error in this respect was harmless.  See Booz, 734 F.2d at

28  1380.

the side effects are in fact associated with Plaintiff's medications.  (Id. at 7.)

Under Ninth Circuit law, the ALJ must "consider *all* factors that might have a 'significant impact on an individual's ability to work.'"  Erickson v. Shalala, 9 F.3d 813, 817 (9th Cir. 1993) (quoting Varney v. Sec'y of Health & Human Servs., 846 F.2d 581, 585 (9th Cir.), relief modified, 859 F.2d 1396 (1988)).  Such factors "may include side effects of medications as well as subjective evidence of pain."  Erickson, 9 F.3d at 818.  When the ALJ disregards the claimant's testimony as to subjective limitations of side effects, he or she must support that decision with specific findings similar to those required for excess pain testimony, as long as the side effects are in fact associated with the claimant's medications.  See Varney, 846 F.2d at 545; see also Muhammed v. Apfel, No. C98-02952-CRB, 1999 WL 260974 (N.D. Cal. 1999).

Plaintiff claims that he provided evidence documenting his various narcotic and other analgesic medications, such as vicodin and norco, taken to alleviate his pain. (JS at 7.)  Plaintiff further claims that he provided testimony that he spends much of his day sleeping.  (Id.)  Plaintiff argues that these medications impact his "ability to engage in full time competitive employment."  (Id.)  Finally, Plaintiff contends, "Although [Plaintiff] does not specifically address the fact that he experiences drowsiness from these medications the nature of them is such that it would be unusual indeed if, in fact he did not experience same."  (Id.)

Despite Plaintiff's contentions, the record is devoid of any evidence documenting any side effects from medications.  In his Disability Report, Plaintiff indicated that he was taking the following medications:  Allopurinol for gout, Darvocet and Lorcet for pain, and Vicodin for sleep. (AR at 71-72.)  Plaintiff did not state that he suffered any side effects from these medications.  (Id.)  Later, in his Disability Report - Appeal, Plaintiff indicated that he was not taking any medication.  (Id. at 102, 107, 114.)  Further, there is no evidence that Plaintiff

1  ever complained of side effects from his medications to either his treating or

2  consultative physicians.  (Id. at 118-209.)  Finally, while Plaintiff testified that he

3  was taking Norco, Indocin, and Allopurinol for pain, he failed to testify that he

4  suffered any side effects from the medications.  (Id. at 214.)

5       Plaintiff does not dispute that medication side effects must be medically

6  documented in order to be considered.  See Miller v. Heckler, 770 F.2d 845, 849

7  (1985).  On this record, the Court is unable to find that any alleged side effects of

8  Plaintiff's medications were medically documented.  (AR at 112-214.)  Thus,

9  there was no reason for the ALJ to consider any potential side effects.

10       Based on the foregoing, the Court finds that the ALJ did not err by failing

11  to consider the side effects of Plaintiff's medications, as required by Social

12  Security Ruling 96-7p.

13  **C.**    **The ALJ Properly Evaluated Plaintiff's Credibility.**

14       Plaintiff contends the ALJ failed to properly assess Plaintiff's credibility.

15  (JS at 8-9, 11.)  Plaintiff further contends that the ALJ failed to provide specific,

16  cogent reasons for rejecting his subjective complaints of muscle atrophy.  (Id. at

17  9.)

18       An ALJ's credibility finding must be properly supported by the record and

19  sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily

20  reject a claimant's subjective testimony.  Bunnell v. Sullivan, 947 F.2d 341, 345-

21  47 (9th Cir. 1991).  An ALJ's assessment of pain severity and claimant credibility

22  is entitled to "great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir.

23  1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  When, as here, an

24  ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny

25  benefits, the ALJ must make explicit credibility findings.  Rashad v. Sullivan, 903

26  F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir.

27  1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit

28

1    finding that claimant was not credible is insufficient).

2         Under the "Cotton test," where the claimant has produced objective

3    medical evidence of an impairment which could reasonably be expected to

4    produce some degree of pain and/or other symptoms, and the record is devoid of

5    any affirmative evidence of malingering, the ALJ may reject the claimant's

6    testimony regarding the severity of the claimant's pain and/or other symptoms

7    only if the ALJ makes specific findings stating clear and convincing reasons for

8    doing so.  See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also

9    Smolen, 80 F.3d at 1281; Dodrill, 12 F.3d at 918; Bunnell, 947 F.2d at 343.

10        To determine whether a claimant's testimony regarding the severity of his

11   symptoms is credible, the ALJ may consider, inter alia, the following evidence:

12   (1) ordinary techniques of credibility evaluation, such as the claimant's reputation

13   for lying, prior inconsistent statements concerning the symptoms, and other

14   testimony by the claimant that appears less than candid; (2) unexplained or

15   inadequately explained failure to seek treatment or to follow a prescribed course

16   of treatment; (3) the claimant's daily activities; and (4) testimony from physicians

17   and third parties concerning the nature, severity, and effect of the claimant's

18   symptoms.  Thomas, 278 F.3d at 958-59; see also Smolen, 80 F.3d at 1284.

19        Social Security Ruling ("SSR") 96-7p also provides factors that may be

20   considered to determine a claimant's credibility such as:

21        1) the individual's daily activities;

22        2) the location, duration, frequency, and intensity of the individual's pain

23        and other symptoms;

24        3) factors that precipitate and aggravate the symptoms;

25        4) the type, dosage, effectiveness, and side effects of any medication the

26        individual takes or has taken to alleviate pain or other symptoms;

27        5) treatment, other than medication, the individual receives or has received

28

9

for relief of pain or other symptoms;

6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p.

Here, the ALJ based his adverse credibility determination on Plaintiff's daily activities, inconsistent statements made by Plaintiff, and the testimony of Plaintiff's best friend. (AR at 15.) As to Plaintiff's daily activities, the ALJ provided:

> In finding him not entirely credible, I note that initially he testified that he does absolutely nothing all day and estimated he lies down about 80 percent of the time. Upon further questioning, the claimant did acknowledge he makes his own bed, cleans his room, sweeps the driveway, and enjoys building things with wood, but insisted he engaged in such activities for only very short periods of time. The record, however, simply does not support his allegations in this regard and surely does not show any muscle atrophy, which would be expected if he were truly as incapacitated as he asserts. His assertions during the hearing are also not consistent with his written statements regarding his daily activities. That is, he has previously indicated he goes for walks, does household chores such as washing dishes, sweeping the floor, and laundry, takes care of his two children every other weekend, prepares meals, goes shopping, manages his finances, and shares meals and plays cards and board games with friends.

1    (Id. (citation omitted).)

2        The record and Plaintiff's inconsistent testimony support the ALJ's

3    opinion.  In his Function Report, Plaintiff reported that his daily activities consist

4    of watching television, listening to the radio, cleaning his apartment, and walking

5    outside, depending on how he is feeling.  (Id. at 81.)  Plaintiff's self-reported

6    daily activities include the following:  (a) preparing frozen or regular meals daily

7    for approximately thirty minutes; (b) cleaning activities in spans of five to ten

8    minutes before resting, including washing the dishes, sweeping the floor, wiping

9    the counter tops and laundering; (c) walking, driving a car or riding as a

10   passenger in a car as often as he is able to; (d) shopping in stores for food and

11   other personal necessities every two to three days for about twenty minutes each

12   time; (e) watching television and listening to the radio; (f) caring for his two

13   children on the weekends; and (g) spending time talking, playing cards/board

14   games or walking with friends every day.   (Id. at 83-85.)  Plaintiff also reported

15   that he does not complete yard work because it requires bending, pushing,

16   squatting, and kneeling, all which he is unable to do.  (Id. at 84.)  Despite the

17   range of daily activities that Plaintiff reported in his Function Report, Plaintiff

18   testified at the hearing that he lays down for approximately eighty percent of the

19   day.  (Id. at 214.)  Plaintiff stated that his daily tasks included attempting to make

20   his bed, clean his room, walk outside and sweep the driveway, but he required

21   several breaks and tired easily.  (Id. at 215-16.)  He further stated that when he

22   tired from attempting a task, he would sit down, lay down or watch television.

23   (Id.)  Thus, Plaintiff provided testimony at the hearing that indicated that his daily

24   activities were far more limited than what he previously described in his self-

25   reported Function Report.

26       Relying upon Plaintiff's own description of his daily activities, the ALJ

27   found Plaintiff not to be a credible witness and discredited the severity of

28

11

1   Plaintiff's subjective complaints.  20 C.F.R. § 404.1513(d); 20 C.F.R. §
2   416.913(d).  The ALJ opined:

3           While the claimant's ability to perform these [daily] activities does not
4           necessarily prove he could obtain and maintain employment, his ability
5           to perform these activities does suggest he retains the physical and
6           mental capacity to perform at least basic work-life activities.
7           Moreover, his inconsistent statements regarding his activities detracts
8           from his credibility in general and suggest he has attempted to portray
9           himself as more limited than he actually is.

10  (AR at 15.)  It was proper for the ALJ to rely on Plaintiff's daily activities, such
11  as, inter alia, completing household chores, shopping for food, traveling via foot
12  or car, caring for his children, etc., to support his adverse credibility
13  determination.  See, e.g., Thomas, 278 F.3d at 958-59 (ALJ may properly
14  consider inconsistencies between claimant's testimony and claimant's daily
15  activities); Morgan v. Apfel, 169 F.3d 595, 599-600 (9th Cir. 1999) (ALJ may
16  properly rely on contradictions between claimant's reported limitations and
17  claimant's daily activities); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998)
18  (daily activities inconsistent with total disability undermined subjective testimony
19  of disabling pain); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may
20  properly rely on claimant's daily activities, including ability to drive); Fair v.
21  Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (ALJ may properly rely on daily
22  activities inconsistent with claim of disabling pain).

23          The ALJ also based his adverse credibility determination on the
24  observations of Plaintiff's best friend, Shannon Sutton.  (AR at 15.)  Partially
25  relying upon testimony from Ms. Sutton regarding Plaintiff's daily activities and
26  the nature, severity and effect of Plaintiff's subjective symptoms of muscle
27  atrophy, the ALJ found that Plaintiff's daily activities are consistent with his

28

1  ability to perform sedentary work. (Id.); see also Thomas, 278 F.3d at 958-59;

2  Smolen, 80 F.3d at 1284. The ALJ provided:

3         Finally, I have considered the written statements of the
4         claimant's friend, Shannon Sutton. She indicated that she and claimant
5         and the claimant's girlfriend get together to play cards and watch
6         movies nearly every day. She also indicated that while the claimant
7         does experience pain and has a limited ability to walk, he appears
8         capable of doing household chores, preparing meals, shopping for
9         necessities, socializing with friends, and taking care of his children
10        every other weekend. While not particularly detailed, Ms. Sutton's
11        account of the claimant's daily activities is not inconsistent with an
12        ability to perform sedentary jobs and is therefore given some weight to
13        the extent it is consistent with the findings reached herein.

14 (AR at 15 (citation omitted).) The record supports the ALJ's opinion. (Id. at 89-

15 93.) Ms. Sutton reported that Plaintiff, his girlfriend and Ms. Sutton watch

16 television, play cards and talk on a daily basis. (Id. at 89.) Ms. Sutton confirmed

17 that Plaintiff's other daily activities includes: preparing his meals for

18 approximately fifteen minutes, washing dishes and laundry, traveling outside by

19 foot or car, shopping in stores alone, and visiting the doctor. (Id. at 91-93.) Thus,

20 the ALJ properly relied on the testimony of Ms. Sutton to discredit Plaintiff's

21 testimony and to support the conclusion that Plaintiff was able to perform

22 sedentary work.

23        Based on the foregoing, the Court finds that the ALJ provided clear and

24 convincing reasons, supported by substantial evidence, for rejecting Plaintiff's

25 subjective symptoms of muscle atrophy. Thus, there was no error.

26 **D.    The ALJ Fully and Fairly Developed the Record.**

27        Plaintiff's last contention is that the ALJ failed to properly develop the

28

13

record when he failed to ascertain records confirming previous surgeries on his wrists, knees, and left shoulder.  (JS at 11-13.)  Specifically, Plaintiff contends that if the ALJ found any ambiguity regarding Plaintiff's statements about his past surgeries to his treating physician, then the ALJ should have sought such missing medical records.  (Id. at 12.)  The Court disagrees.

The ALJ has an independent duty to fully and fairly develop a record in order to make a fair determination as to disability, even where, as here, the claimant is represented by counsel.  Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003); see also see also Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996).  The duty is heightened when the claimant is unrepresented or is mentally ill and is, thus, unable to protect her own interests.  Celaya, 332 F.3d at 1183; Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir.1992); see also Burch v. Barnhart, 400 F.3d 676, 682-83 (9th Cir. 2005) (distinguishing Burch from Celaya at least in part, based on the fact that the plaintiff in Burch was represented by counsel).  Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry."  See Tonapetyan, 242 F.3d at 1150.

Here, the ALJ had adequate information to consider the opinion of treating physician Dr. Suman P. Thakkar without further inquiry, and in fact, conducted a lengthy evaluation of Dr. Thakkar's opinion.  (AR at 14.)  The ALJ stated:

> The claimant told Dr. Thakkar he had mid-back pain since falling in a parking lot in March . . . . He also stated he multiple injuries related to his fall and had undergone surgery on his wrist, knees, and left shoulder (although there are no surgical reports in evidence to confirm his assertion in this regard).

(Id.)  While the ALJ noted that such records of Plaintiff's previous surgeries were

14

1   not in the record, the ALJ still considered Dr. Thakkar's opinion.  (Id. at 14-15.)

2   The ALJ noted that Plaintiff's treating physicians, including Dr. Thakkar,

3   prescribed pain medication and physical therapy to for back, hip and knee

4   problems.  (Id.)  The ALJ also noted that while Plaintiff's treating physicians

5   opined that Plaintiff could not perform his past strenuous work, the treating

6   physicians did not indicate that Plaintiff was unable to perform less-demanding,

7   sedentary work.  (Id. at 15.)  There is no indication that due to any ambiguity of

8   the evidence, the ALJ was unable to consider the opinion of Dr. Thakkar.  As

9   stated previously, Plaintiff does not allege that the ALJ erred by improperly

10  evaluating the opinion of Plaintiff's treating physicians.[5]  (See generally JS.)

11  Additionally, Plaintiff fails to explain how Dr. Thakkar's opinions are ambiguous

12  or inadequate.  See Mayes v. Massanari, 276 F.3d 453, 458 (9th Cir. 2001) (citing

13  42 U.S.C. § 423(d)(5) (Supp. 2001) and Clem v. Sullivan, 894 F.2d 328, 330 (9th

14  Cir. 1990)) (plaintiff has a duty to prove that she is disabled).  Based on the

15  foregoing, the Court finds that the ALJ fully and fairly developed the record with

16  respect to Dr. Thakkar's medical opinion.  Thus, there was no error.

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26

27  ─────────────

28      [5]  The Court, accordingly, will not discuss this issue.

15

## IV.

## **ORDER**

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated:  March 6, 2009

_____
HONORABLE OSWALD PARADA
United States Magistrate Judge

16